United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 20, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-32658 |
| **KATHLEEN LOUISE GRIFFIN,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION

Pending before the Court is a single matter self-styled as, "Alleged Debtor's Fourth Amended Answer to Involuntary Petition and Motion for Order Dismissing Involuntary Petition for Cause" filed by Kathleen Louise Griffin on October 17, 2023. For all of the reasons discussed *infra*, (1) the involuntary petition filed by Lori Hood on July 14, 2023, is dismissed with prejudice for failure to satisfy the eligibility requirements of § 303(b), and (2) Kathleen Louise Griffin is awarded reasonable attorney's fees and costs pursuant to § 303(i)(1) and compensatory and punitive damages pursuant to § 303(i)(2).

### I.   BACKGROUND

1. On July 14, 2023, Lori Hood ("*Petitioning Creditor*") filed an involuntary petition ("*Involuntary Petition*") against Kathleen Louise Griffin ("*Alleged Debtor*") under Chapter 7 of the United States Bankruptcy Code.[1]

2. Petitioning Creditor asserts, as the basis of her Involuntary Petition, that Alleged Debtor owes her $58,571.23 based on four allegedly unpaid promissory notes ("*Claim*").[2]

3. Petitioning Creditor is the only petitioning creditor in this case.[3]

4. On August 8, 2023, Alleged Debtor filed her, "Alleged Debtor's Answer to Involuntary Petition, Motion for Order Dismissing Involuntary Petition for Cause and Request for Sanctions" ("*Answer/MTD*").[4]

---

[1] ECF No. 1.
[2] *Id.* ¶ 13.
[3] *See* ECF No. 1.
[4] ECF No. 7.

5. On August 9, 2023, the Court struck Alleged Debtor's Answer/MTD for failing to attach a proposed order and for violating Federal Rule of Civil Procedure ("*Rule*") 11(c)(2) concerning motions for sanctions.[5]

6. On August 10, 2023, Alleged Debtor filed her, "Alleged Debtor's Motion to Extend Time to File and Serve a Response to Involuntary Petition" ("*Motion to Extend*").[6]

7. On August 11, 2023, the Court granted Alleged Debtor's Motion to Extend ("*Extension Order*") thereby granting Alleged Debtor until August 18, 2023, to file an amended answer or motion to dismiss.[7]

8. On August 13, 2023, Alleged Debtor filed her, "Alleged Debtor's First Amended Answer to Involuntary Petition and Motion for Order Dismissing Involuntary Petition for Cause" ("*Amended Answer/MTD*").[8]

9. On August 28, 2023, Petitioning Creditor filed her, "Petitioning Creditor's (I) Motion for Reconsideration of the Court's Extension Order and (II) Objection to Extension Motion, or Alternatively, Motion to Strike Extension Motion" ("*Motion to Reconsider*").[9]

10. On August 29, 2023, Alleged Debtor filed her, "Alleged Debtor's Second Amended Answer to Involuntary Petition and Motion for Order Dismissing Involuntary Petition for Cause" ("*Second Amended Answer/MTD*").[10]

11. The Court set an initial hearing date for the Motion to Reconsider and Second Amended Answer/MTD for September 13, 2023, but it was continued by agreement until October 6, 2023.[11]

12. Petitioning Creditor did not file a response to Alleged Debtor's Answer/MTD, Amended Answer/MTD or Second Amended Answer/MTD.

13. Alleged Debtor did not file a timely response to Petitioning Creditor's Motion to Reconsider.

14. On October 6, 2023, the Court held a hearing ("*Hearing*") on Alleged Debtor's Second Amended Answer/MTD.

15. On October 10, 2023, the Court held a hearing ("*Second Hearing*") on Petitioning Creditor's Motion to Reconsider.

---

[5] ECF No. 8.
[6] ECF No. 9.
[7] ECF No. 10.
[8] ECF No. 12.
[9] ECF No. 16.
[10] ECF No. 17.
[11] *See* ECF No. 30; September 13, 2023, Courtroom Minutes.

16. On October 12, 2023, this Court denied Petitioning Creditor's Motion to Reconsider and partially denied Alleged Debtor's Second Amended MTD/Answer with respect to her Rule 12(b)(6) arguments.[12]

17. On October 17, 2023, Alleged Debtor filed her, "Alleged Debtor's Fourth Amended Answer to Involuntary Petition and Motion for Order Dismissing Involuntary Petition for Cause"[13] ("*Fourth Amended Answer*").

## II.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[14] This Court determines that pursuant to 28 U.S.C. § 157(b)(1) that this Court may hear and determine the disposition of this Involuntary Petition. Furthermore, pursuant to § 157(2)(A) and (O) this is a core proceeding as it concerns the administration of the estate and adjustment of the debtor-creditor relationship in this case.

This Court may only hear a case in which venue is proper.[15] Pursuant to 28 U.S.C. § 1408(1), venue is proper "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding [the petition date]…" Here, Alleged Debtor was located in Houston, TX for 180 days preceding the petition date.[16] Thus, venue is proper.

---

[12] ECF No. 59. *See also* ECF No. 58.
[13] ECF No. 62.
[14] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[15] 28 U.S.C. § 1408.
[16] ECF No. 1, ¶ 10.

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[17] As discussed, *supra*, the pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[18] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[19] The parties have engaged in litigation in front of this Court, including numerous hearings and motions practice. None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III. ANALYSIS

Pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 1013(a), this Court must, "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order."[20] "Earliest practicable time" has been interpreted to mean as soon as "there is sufficient information to resolve

---

[17] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1938–40, 191 L.Ed.2d 911 (2015).
[18] See, e.g., *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[19] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[20] Fed. R. Bankr. P. 1013(a).

the conflict before the court."[21] This Court has already received sufficient evidence at the Hearing to resolve Alleged Debtor's Fourth Amended Answer.

Pending before the Court is a single matter: Alleged Debtor's Fourth Amended Answer.[22] Alleged Debtor seeks dismissal of the Involuntary Petition because (A) Petitioning Creditor's Claim is subject to a bonafide dispute, and Petitioning Creditor has failed to satisfy the numerosity requirements for a single petitioning creditor.[23] Additionally, Alleged Debtor seeks (B) an award of reasonable attorney's fees and costs, and (C) compensatory and punitive damages.[24] Alleged Debtor additionally seeks dismissal pursuant to § 105, but this matter is already under advisement.[25] The Court will consider each in turn.

### A. Whether Petitioning Creditor has met the eligibility requirements under § 303(b) to file an involuntary petition against Alleged Debtor

Alleged Debtor argues that the Involuntary Petition should be dismissed because (1) Petitioning Creditor's Claim is subject to bonafide dispute in contravention of the eligibility requirements for petitioning creditors in § 303(b) and (2) Petitioning Creditor was ineligible to file this petition by herself because Alleged Debtor has more than twelve or more qualifying creditors under § 303(b).[26] The Court will consider each in turn.

### 1. Whether Petitioning Creditor's Claim is subject to a bonafide dispute

Alleged Debtor first argues that Petitioning Creditor's Claim is subject to bonafide dispute in contravention of the eligibility requirements for petitioning creditors in § 303(b).[27]

---

[21] *In re Positron Corp.*, 556 B.R. 291, 295 (Bankr. N.D. Tex. 2016). *See also Hayes v. Rewald,* 779 F.2d 471, 475-76 (9th Cir.1985)).
[22] ECF No. 62.
[23] *Id.*
[24] *Id.*
[25] *See id.*
[26] *Id.*
[27] *Id.*

Involuntary bankruptcy petitions are governed by § 303 of the Bankruptcy Code.[28] Section 303(b) sets the numerosity and debt thresholds for petitioning creditors eligible to commence an involuntary case.[29] It is a gating provision intended to place limitations on the commencement of an involuntary case."[30] Section 303(b) further provides, inter alia, that a petitioning creditor's claim must not be contingent as to liability or the subject to a bonafide dispute as to liability or amount.[31] The Fifth Circuit has held courts should determine whether a bona fide dispute exists as to liability or amount using an objective standard that seeks to "determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt."[32]

In considering this prohibition, "[t]he court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute."[33] In other words, the bankruptcy court's job is not to conduct a thorough trial and determine the proper legal result but simply to determine whether a bona fide dispute exists.[34] The petitioning creditor may meet its burden of establishing a prima facie case that no bona fide dispute exists by submitting evidence of the debtor's default on an obligation.[35] The burden then shifts to the debtor to present evidence demonstrating a bona fide dispute does exist.[36] Neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden.[37] Furthermore, the Fifth Circuit in *In re Green*

---

[28] 11 U.S.C. § 303.
[29] *Id.*
[30] *In re Haymond*, 638 B.R. 853, 860 (Bankr. S.D. Tex. 2022) (further citations omitted).
[31] 11 U.S.C. § 303(b).
[32] *Sims v. Subway Equip. Leasing Corp.*, 994 F.2d 210, 221 (5th Cir. 1993).
[33] *Id.* (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)).
[34] *Sims*, 994 F.2d at 221.
[35] *Id.*; *see also In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81, 93 (Bankr. S.D.N.Y. 2020) (holding creditor met burden by attaching unpaid invoices evidencing liability and nonpayment).
[36] *Sims*, 994 F.2d at 221.
[37] *See, e.g., In re Byrd*, 357 F.3d 433, 440 (4th Cir. 2004) ("[The debtor] cannot defeat [a creditor's] standing to file under § 303(b)(2) simply by refusing to concede the validity of [its] claim, without presenting evidence to support his factual and legal arguments."
); *In re Norris*, 183 B.R. 437, 454 (Bankr. W.D. La. 1995) (holding debtor's "subjective opinion" that judgment against him would be reversed on appeal did not rise to level of bona fide dispute).

*Hills Development Co., L.L.C.* has provided that, "[g]iven that a debtor may demonstrate the existence of a bona fide dispute without filing a separate lawsuit, a creditor whose claim is the object of unresolved, multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy. The § 303(b) requirement exists to prevent that very use of involuntary bankruptcy."[38]

Here, the Court first notes that Petitioning Creditor's claim has not been reduced to judgment and in fact has been in state court litigation for the last three years with trial set for spring 2024.[39] The Court additionally received substantial evidence at the Hearing concerning the dispute and it was evident that both the Alleged Debtor and Petitioning Creditor strongly dispute whether or not the promissory notes that comprise Petitioning Creditor's Claim in this case had been satisfied or not.[40] Numerous checks were also presented to the Court that Alleged Debtor contends were paid to Petitioning Creditor in satisfaction of her Claim, which Petitioning Creditor disputes.[41] As discussed *supra*, the Fifth Circuit has provided that, "a creditor whose claim is the object of unresolved, multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy."[42] This is exactly what Petitioning Creditor is attempting to do here. As such, this Court finds that Petitioning Creditor's Claim is clearly subject to a bonafide dispute.

The Court will next consider if Petitioning Creditor met the numerosity requirements in § 303(b) for a single petitioning creditor.

2. **Whether Petitioning Creditor satisfied the numerosity requirements for a single petitioning creditor in § 303(b)**

---

[38] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659–60 (5th Cir. 2014).
[39] October 6, 2023, Courtroom Minutes (trial testimony). *See also* ECF No. 44-23-30.
[40] October 6, 2023, Courtroom Minutes (trial testimony).
[41] *Id.*
[42] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659–60 (5th Cir. 2014).

Next, Alleged Debtor asserts that Petitioning Creditor has failed to meet the numerosity requirements in § 303(b) for lone petitioning creditors.[43]

Section 303(b) provides, inter alia, that a single petitioning creditor can file an involuntary petition as long as the Alleged Debtor has fewer than twelve qualifying creditors.[44] To be a qualifying creditor, the claim held by such creditor, same as the petitioning creditor's claim, must not be contingent or subject to bonafide dispute, and the claims together must aggregate at least $18,600.[45] When numerosity under 303(b) is called into question, the alleged debtor must file a list of creditors pursuant to Federal Rule of Bankruptcy Procedure 1003(b).[46] After such creditor list is filed, the petitioning creditor(s) have the burden of proof by a preponderance of the evidence to show that such creditors do not qualify.[47] For purposes of analyzing whether creditors qualify under § 303(b) for purposes of the numerosity requirements, claims exclude those held by, "any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a)…"[48]

Here, Alleged Debtor filed a list pursuant to Bankruptcy Rule 1003(b) of 25 alleged qualifying creditors.[49] Alleged Debtor provided testimony at the hearing that each of these creditors hold claims that are not contingent, and are not subject to a bonafide dispute, and that the aggregate amount of these claims well exceed $18,600.[50] Although Petitioning Creditor attempted to cross examine the Alleged Debtor with respect to her alleged qualifying creditors, Petitioning Creditor ultimately failed to put on any evidence or otherwise provide any reason to disqualify any

---

[43] ECF No. 62.
[44] 11 U.S.C. § 303(b).
[45] *Id. See also In re James Plaza Joint Venture*, 67 B.R. 445, 447 (Bankr. S.D. Tex. 1986).
[46] Fed. R. Bankr. P. 1003(b).
[47] *In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115, 142 (Bankr. N.D. Tex. 2018).
[48] 11 U.S.C. § 303(b).
[49] ECF No. 17-1.
[50] *See* October 6, 2023, Courtroom Minutes (trial testimony).

of Alleged Debtor's creditors.[51] The Court finds that Petitioning Creditor has failed to meet her burden to show that Alleged Debtor has less than twelve qualifying creditors. As such, because the Court finds that Petitioning Creditor's Claim is subject to a bonafide dispute and Alleged Debtor has at least twelve qualifying creditors, Petitioning Creditor was not eligible to file this Involuntary Petition pursuant to § 303(b).

Accordingly, the Involuntary Petition is dismissed with prejudice.

Next, the Court will consider Alleged Debtor's request for fees and costs under § 303(i).

## B. Attorney's Fees & Costs

Next, Alleged Debtor requests that this Court award reasonable attorney's fees and costs pursuant to § 303(i).[52] Section 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment--
> (1) against the petitioners and in favor of the debtor for--
> (A) costs; or
> (B) a reasonable attorney's fee; or
> (2) against any petitioner that filed the petition in bad faith, for--
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.[53]

Courts in the Southern District of Texas, including this Court, generally utilize a four factor totality of the circumstance test in assessing whether an award of attorney's fees and costs should be awarded under § 303(i) following the dismissal of an involuntary petition.[54] These factors include: (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the

---

[51] *See id.*
[52] ECF No. 62.
[53] 11 U.S.C. § 303(i).
[54] *In re HL Builders, LLC*, 630 B.R. 32, 39 (Bankr. S.D. Tex. 2020).

motivation and objectives behind filing the involuntary petition.[55] The Court will consider each in turn.

First, athough the petition was ultimately unsuccessful, the first factor analyzes the degree to which an involuntary petition had merit.[56] Here, as discussed *supra*, this Court finds that the Involuntary Petition had no merit and that Petitioning Creditor's Claim was clearly and unequivocally subject to a bonafide dispute.

Second, no evidence was provided at the Hearing that the Alleged Debtor engaged in any improper conduct.

Third, with respect to the reasonableness of a petitioning creditor's actions, "[c]reditors are justified in filing an involuntary bankruptcy against a debtor where exclusive bankruptcy powers and remedies may be usefully invoked to recover transferred assets, to insure an orderly ranking of creditors' claims and to protect against other creditors obtaining a disproportionate share of debtor's assets."[57] Here, there is no evidence that Petitioning Creditor filed this Involuntary Petition to recover transferred assets, to ensure an orderly ranking of creditors' claims, or to protect against other creditors obtaining a disproportionate share of debtor's assets. This Court finds that Petitioning Creditor's decision to file this Involuntary Petition was unreasonable and was not designed to utilize any legitimate purpose of bankruptcy.

Last, as discussed in greater detail *infra*, this Court finds that this Involuntary Petition was filed in bad faith in an attempt to inflict harm onto the Alleged Debtor and not for any legitimate bankruptcy purpose. As such, this Court finds that the totality of the circumstances support an award of reasonable attorney's fees and costs pursuant to § 303(i)(1).

---

[55] *Id.*
[56] *Id.*
[57] *Id.*

Accordingly, Alleged Debtor is awarded reasonable attorney's fees and costs pursuant to § 303(i)(1).

The Court will next consider Alleged Debtor's request for compensatory & punitive damages.

## C. Compensatory & Punitive Damages

Next, Alleged Debtor requests that this Court award compensatory & punitive damages for filing this petition in bad faith pursuant to § 303(i)(2).[58]

The Bankruptcy Code does not explicitly define "bad faith" under § 303(i)(2).[59] Although the standard for what constitutes bad faith varies from circuit to circuit, the Fifth Circuit in *In re Sims* has stated that the criteria for bad faith is a motivation to file by "ill will, malice or for the purpose of embarrassing or harassing the debtors."[60] In that case, the Fifth Circuit also found that an involuntary petition was not filed in bad faith because the creditor conducted a reasonable inquiry into the facts and the law prior to filing the petition as required by Bankruptcy Rule 9011.[61] Thus, the Fifth Circuit considers both subjective and objective factors in determining whether an involuntary petition was filed in bad faith.[62]

Here, at the Hearing the Court received testimony from a certain Melissa Brown ("*Brown*"). Brown provided disturbing testimony that Petitioning Creditor had admitted to her while intoxicated that it was her express intent to "destroy" the Alleged Debtor and her business and have her put into bankruptcy.[63] Brown's testimony was not controverted by the Petitioning Creditor and no cross examination was conducted nor was any impeachment evidence introduced

---

[58] ECF No. 62.
[59] *In re: HL Builders, LLC*, No. 19-32825, 2020 WL 833287, at *16 (Bankr. S.D. Tex. Feb. 18, 2020) (citing *In re CorrLine Int'l, LLC*, 516 B.R. at 141).
[60] *Subway Equip. Leasing Corp. v. Sims,* 994 F.2d 210, 221 (5th Cir.1993).
[61] *See id.*
[62] *See id.*
[63] October 6, 2023, Courtroom Minutes (testimony of Melissa Brown at 2:02-05 pm).

to rebut Brown's testimony. Furthermore, although a hearsay objection was raised, it was overruled pursuant to Federal Rule of Evidence ("*FRE*") 801(2) as an opposing party statement. Although Brown testified that she was a long time friend of Alleged Debtor, this alone does not lead this Court to discount the credibility of Brown's testimony. This Court, in fact, finds Brown's testimony to be quite credible and this Court gives it great weight.

Furthermore, the Court also finds that Petitioning Creditor did not conduct a reasonable inquiry into whether or not she was entitled to file this Involuntary Petition against Alleged Debtor. As discussed *supra*, the Fifth Circuit has held that this is exactly the kind of involuntary petition that is not eligible to be filed and Petitioning Creditor's Claim is unequivocally subject to a bonafide dispute.[64] From the testimony received and evidence presented, this Court is similarly unconvinced that Petitioning Creditor conducted any significant investigation into how many qualifying creditors that Alleged Debtor had prior to filing the Involuntary Petition.[65]

Thus, the Court finds that Petitioning Creditor filed this case in bad faith and with intent to harass Alleged Debtor. The Court further finds that Petitioning Creditor conducted no reasonable inquiry into the law or facts prior to filing this petition. As such, although sanctions pursuant to § 303(i)(2) are discretionary, this Court finds that in light of the egregious bad faith in this case that an award of compensatory and punitive damages is appropriate to dissuade Petitioning Creditor from similar abuses of the bankruptcy process in the future. While this Court is empowered to issues punitive damages under § 303(i)(2) without awarding compensatory damages,[66] it is well

---

[64] *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659–60 (5th Cir. 2014).
[65] October 6, 2023, Courtroom Minutes (trial testimony).
[66] *In re TRED Holdings, L.P.*, No. 10-40749, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010) (further citations omitted); *In re Wavelength, Inc.*, 61 B.R. 614, 621 (B.A.P. 9th Cir. 1986) ("The Bankruptcy Code specifically authorizes punitive damages "even in the absence of or in addition to actual damages."). *In re S. California Sunbelt Devs., Inc.*, 608 F.3d 456, 465 (9th Cir. 2010) ("Under the federal common law, punitive damages are recoverable in the absence of actual damages where authorized by statute… We therefore hold that punitive damages may be awarded under § 303(i)(2)(B) even absent an award of actual damages under § 303(i)(2)(A).").

settled that punitive damages must bear a reasonable relationship to compensatory damages.[67] As such, the Court will hold a damages hearing at a later date to determine what amount is appropriate.

Accordingly, this Court finds that Alleged Debtor is entitled to compensatory and punitive damages pursuant to § 303(i)(2).

## IV.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED October 20, 2023

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[67] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996). ("The principle that exemplary damages must bear a "reasonable relationship" to compensatory damages has a long pedigree… the proper inquiry is 'whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred.'").